**CHRISTEN INCORPORATED, Plaintiff,**

v.

**BNS INDUSTRIES, INC., Defendant.**

**80 Civ. 6531 (WCC).**

United States District Court,
S. D. New York.

June 30, 1981.

Frederick H. Block, New York City, for plaintiff; Kalish & Gilster, St. Louis, Mo., of counsel.

Anderson, Russell, Kill & Olick, P. C., New York City, for defendant; Nicholas L. Coch, John E. Daniel, New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

In this action for alleged infringement of three design patents on cooking utensils, defendant has counterclaimed (1) for a declaratory judgment of the invalidity, unenforceability and non-infringement of the three patents in suit; (2) for alleged conspiracy to restrain trade in the three types of cooking utensils covered by the respective patents, namely, spatulas, tongs and forks; (3) for allegedly having "attempted to obtain ... a monopoly over [such] cookery utensils"; and (4) for alleged harassment and intimidation of competitors and potential customers of defendant. Now before the Court is plaintiff's motion under Rule 12(b)(6), F.R.Civ.P., to dismiss all four counterclaims for failure to state a claim upon which relief could be granted.

The motion is granted as to the Third Counterclaim and denied as to the First, Second and Fourth Counterclaims.

## FIRST COUNTERCLAIM

■ In its First Counterclaim, defendant incorporates by reference the allegations of Paragraphs 1 through 21 of the Amended Answer, *i. e.,* all of the preceding paragraphs including those containing the four affirmative defenses that the patents in suit are invalid, void and unenforceable because (1) the patented inventions were known and used by others, described in patents and printed publications and obvious to persons having ordinary skill in the art, all before the alleged invention thereof by the patentees; (2) the subject matter of the patents which allegedly differs from the prior art is not ornamental but functional and utilitarian; (3) plaintiff failed to mark as patented its products incorporating the patented designs and defendant was unaware of the patents when it began manufacture and sale of the accused utensils; and (4) plaintiff knew that the allegedly novel features of the designs were functional rather than ornamental, but wilfully failed to disclose this material information to the Patent Office.

If the allegations of the First Affirmative Defense can be proven, the patents are invalid under 35 U.S.C. §§ 102(a) and 103; if the allegations of the Second Affirmative Defense can be proven, the patents are invalid under 35 U.S.C. § 171; if the allegations of the Third Affirmative Defense can be proven, defendant would be liable for damages only for acts of infringement committed after it was notified of infringement, 35 U.S.C. § 287; if the allegations of the Fourth Affirmative Defense can be proven, the patents are unenforceable on the ground of fraud on the Patent and Trademark Office.

■ Clearly, the First Counterclaim, which incorporates by reference all these allegations, states a claim for a declaratory judgment of invalidity or full or partial unenforceability. A perceived unlikelihood that defendants can actually prove the allegations of the counterclaims is no basis for dismissing them under Rule 12(b)(6).

"For purposes of [a Rule 12(b)(6)] motion, we may look only at the pleadings, with

all of 'the well pleaded material facts alleged in the complaint ... taken as admitted' *Gumer v. Shearson, Hamill & Co.*, 516 F.2d 283, 286 (2d Cir. 1974), and the Complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle him [sic] to relief. *Conley v. Gibson*, 355 U.S. 41 [78 S.Ct. 99, 2 L.Ed.2d 80] ... (1957)." *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (2d Cir. 1977).

### SECOND COUNTERCLAIM

The Second Counterclaim, which alleges conspiracy to restrain trade, likewise incorporates by reference all of the allegations of Paragraphs 1 through 21 of the Amended Answer.

The Second Counterclaim adds the allegation that, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, plaintiff and other unnamed persons "including, on information and belief, certain customers of plaintiff and certain past or potential customers of [defendant]" entered into and engaged in a conspiracy in restraint of trade through the use of plaintiff's fraudulently obtained design patents to intimidate defendant and unnamed others and discourage them from making and selling utensils and to discourage potential customers from buying them, with the result that defendant has sustained injury to its business or property.

The allegations of this counterclaim are not, as plaintiff asserts, insufficient as a matter of law due to defendants' failure to name the alleged co-conspirators. Defendant need not name the co-conspirators in its allegations as long as he identifies them with some particularity, *Eye Encounter v. Contour Art*, 81 F.R.D. 683 (S.D. N.Y.1979); the allegation that they were customers of plaintiff is sufficiently specific, *id.* at 689. Similarly, defendant's allegations as to the purpose of, and overt acts taken pursuant to, the alleged conspiracy— attempted enforcement of a fraudulently obtained patent to intimidate defendant from manufacturing and defendant's customers from purchasing defendant's products—adequately state a claim of unreasonable restraint of trade. *Litton Systems v. AT&T*, 487 F.Supp. 942 (S.D.N.Y.1980); *PFC v. Mobil*, 493 F.Supp. 320 (S.D.N.Y. 1980). Finally, defendant has adequately alleged that these activities had an appreciable effect on commerce.

### THIRD COUNTERCLAIM

The Third Counterclaim adds to the allegations of Paragraphs 1–21 the further allegation that plaintiff, with specific intent, has attempted to obtain a "monopoly over cookery utensils which are the subject matter of the [patents in suit] in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2," with resulting injury to defendant's business or property. This counterclaim is legally deficient. The pleadings do not allege that there exists a relevant market in cookery utensils in general or, more specifically, in spatulas, tongs and forks of the type purportedly covered by the patents in suit; nor is it alleged that the patent gave plaintiff the power to exclude competition or control prices in the relevant market.

Moreover, one of the essential elements of a claim of attempted monopolization under Section 2 is a dangerous probability that the attempt will be successful. *Lorain Journal Co. v. United States*, 342 U.S. 143, 153 (1951); *Nifty Foods Co. v. Great Atlantic & Pacific Tea Co.*, 614 F.2d 832, 841 (2d Cir. 1980). In the Third Counterclaim, there is no language that could conceivably be interpreted as an allegation of a dangerous likelihood of success. Defendants have treated the alleged attempt to enforce a patent obtained by fraud just as if it were a *per se* violation.

In *Walker Process Equipment Co. v. Food Machinery & Chemical Corp.*, 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965), the Supreme Court ruled that enforcing or attempting to enforce a patent obtained by fraud is not a *per se* violation of the antitrust laws and that there is no Section 2 offense unless the attempted enforcement substantially restrains trade in a relevant market:

"To establish monopolization or attempt to monopolize a part of trade or commerce under § 2 of the Sherman Act, it would then be necessary to appraise the exclusionary power of the illegal patent claim in terms of the relevant market for the product involved. Without a definition of that market there is no way to measure Food Machinery's ability to lessen or destroy competition. It may be that the device—knee-action swing difusers—used in sewage treatment systems does not comprise a relevant market. There may be effective substitutes for the device which do not infringe the patent." 382 U.S. at 177–78, 86 S.Ct. at 350–51.

The Court remanded the case to the district court to afford the defendant the opportunity to amend its counterclaim to supply the missing ingredients of a Section 2 claim and to prove these allegations:

"As respondent points out, Walker has not clearly articulated its claim. It appears to be based on a concept of *per se* illegality under § 2 of the Sherman Act. But in these circumstances, the issue is premature. As the Court summarized in *White Motor Co. v. United States,* 372 U.S. 253 [83 S.Ct. 696, 9 L.Ed.2d 738] (1963), the area of *per se* illegality is carefully limited. We are reluctant to extend it on the bare pleadings and absent examination of market effect and economic consequences.

"However, even though the *per se* claim fails at this stage of litigation, we believe that the case should be remanded for Walker to clarify the asserted violations of § 2 and to offer proof thereon." 382 U.S. at 178, 86 S.Ct. at 351.

In *Ekco Products, Inc. v. Dare Plastics, Inc.,* 173 U.S.P.Q. 664, 665–66 (S.D. Ohio, 1972), the Court similarly found insufficient a counterclaim which failed to allege all of the essential elements of a Section 2 monopolization claim:

"The sufficiency of defendant's antitrust allegations must be determined by reference to the principles of law enunciated by the Supreme Court in the *Walker Process* case.

"In *Walker Process* the Supreme Court in substance held that the enforcement of a fraudulently procured patent may violate the anti-monopoly provisions of § 2 of the Sherman Act where the other elements of a monopolization charge are present. Under this decision the unlawful procurement of a patent monopoly by fraud on the Patent Office in and of itself does not constitute a violation of § 2 of the Sherman Act. In order to sustain a monopolization charge based upon the fraudulent procurement of a patent, the counterclaimant must allege and prove the essential elements of a monopolization charge to-wit: that the fraudulently procured patent enabled the holder thereof to obtain the economic dominance or power to control prices in or exclude competition from the relevant market and that the counterclaimant has suffered injury to its trade and property as a result thereof. In other words, 'to establish monopolization or attempt to monopolize a part of trade or commerce under § 2 of the Sherman Act, it would then be necessary to appraise the exclusionary power of the illegal patent claims in terms of the relevant market for the product involved * * *.' *Walker, Inc. v. Food Machinery,* 382 U.S. at page 177 [86 S.Ct. at page 350], 147 U.S.P.Q. at 407.

\*　　\*　　\*　　\*　　\*　　\*

"[The] vague assertion that the plaintiffs' sales constitute a substantial portion of the total market for plastic bread trays falls short of alleging that the plaintiffs have obtained economic domination or the power to fix prices in or exclude competitors from the relevant market.

"Furthermore, in order to establish a Walker Process antitrust counterclaim the defendant must allege that the exclusionary power of the illegal patent claims, in and of itself, enabled the plaintiffs to obtain monopolistic control over the relevant market. The allegation that plaintiffs' sales of plastic bread trays constitutes a substantial portion of the relevant market, in the absence of an allegation

that these sales were derived from products within the scope of the illegal patent, fails to state a claim under Walker Process.

\*    \*    \*    \*    \*    \*

"Accordingly, the Court concludes that defendant's counterclaim which contains vague and conclusory allegations of a violation of § 2 of the Sherman Act, fails to state a claim upon which relief can be granted.

\*    \*    \*    \*    \*    \*

"In accordance with the foregoing the motion of the plaintiffs to dismiss defendant's antitrust counterclaim is sustained without prejudice to the right of defendant to file an amended answer and counterclaim. Said answer and counterclaim shall be filed within sixty days from the date of this decision."

In both *Walker Process* and *Ekco Products, supra,* the defendant was given an opportunity to amend its counterclaims to add the allegations necessary to spell out an antitrust violation. That has already been done in this case. At the pretrial conference at which the Court granted plaintiff leave to move to dismiss the counterclaims for failure to state a cause of action, the Court, *sua sponte,* also granted defendant leave to amend its counterclaims to supply the deficiencies which had been specifically pointed out at the conference, and indicated that the amendments would be considered in ruling on plaintiff's motion to dismiss. Defendant filed an Amended Answer ostensibly for that purpose. But the Third Counterclaim has not been improved in any of the respects discussed herein.

Apparently defendant simply has no basis for alleging that plaintiff attempted or conspired with other entities to achieve monopoly power in a relevant market or that there was a dangerous probability that such attempt would be successful. Thus no apparent purpose would be served by giving defendant another opportunity to correct these deficiencies.

## FOURTH COUNTERCLAIM

In its Fourth Counterclaim, defendant begins by repeating all of the allegations of Paragraphs 1 through 26, relating to the allegedly fraudulent procurement of the patents in suit, plus the allegations of the Second Counterclaim relating to the alleged conspiracy to use the fraudulently obtained patents in harassing and intimidating competitive manufacturers and sellers and potential customers of defendant. The Fourth Counterclaim continues by adding the allegation that this campaign of harassment, intimidation and discouragement has injured plaintiff.

This includes all of the necessary elements of a cause of action for unfair competition. See 2 Callman, Unfair Competition and Trademarks, § 42.4 (3d Ed. 1968).

As previously noted, even the most powerful skepticism as to defendant's ability to prove these allegations is not a proper basis for dismissal under Rule 12(b)(6).

## SUMMARY

For the reasons stated, plaintiff's motion to dismiss is granted as to the Third Counterclaim and denied as to the First, Second and Fourth Counterclaims.

SO ORDERED.